UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

ANASTASIA TIPADIS,                              :

        Plaintiff,                       :       OPINION AND ORDER

      -against-                              :
                                                                            16 Civ. 9864(GWG)
COMMISSIONER OF SOCIAL SECURITY,                :

        Defendant.                       :
-----------------------------------------------------------------x

GABRIEL W. GORENSTEIN, United States Magistrate Judge

    Plaintiff Anastasia Tipadis brings this action pro se pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her request to withdraw her approved application for retirement insurance benefits ("RIB"). The Commissioner has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1] For the reasons stated below, the Commissioner's motion is granted.

I. BACKGROUND

    A. Procedural History

    On August 11, 2011, Tipadis allegedly filed an application for RIB. Certified Administrative Record, filed Mar. 31, 2017 (Docket # 10) ("R."), 9, 14-17. The administrative record contains a summary of this application, which states that Tipadis wanted to begin receiving RIB in August 2011. R. 14-15, 69-70. Another document titled "RECEIPT FOR

---

[1] See Notice of Motion, filed May 15, 2017 (Docket # 17); Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings, filed May 15, 2017 (Docket # 18); Opposition for Motion for Judgment, filed July 19, 2017 (Docket # 20) ("Pl. Mem."); Letter from Assistant United States Attorney John E. Gura, Jr., filed Aug. 10, 2017 (Docket # 21).

YOUR CLAIM FOR SOCIAL SECURITY RETIREMENT INSURANCE BENEFITS" advised Tipadis that if she "disagree[d] with any of [her] statements" in the application, then she should contact the Social Security Administration ("SSA") "within 10 days after receiving this notice to let us know." R. 16-17, 67-68. Tipadis does not claim to have attempted to contact the SSA in this time period.

On August 16, 2011, Tipadis received a "Notice of Award' arising from this application. R. 18-21. Because Tipadis was born on November 8, 1946, R. 9, 14, 69, she had not yet reached full retirement age at the time of her application, and received reduced benefits amounting to $930 per month, R. 9, 18. The notice also stated that if Tipadis disagreed with the decision, then she could appeal it within 60 days after receiving the notice. R. 20. Tipadis does not claim to have filed any such appeal and she concedes that she received the retirement benefits starting in August 2011. R. 91, 96, 100.

On October 17, 2012, Tipadis filed a request to withdraw her application for RIB with the Commissioner, stating "I FILED FOR MY RETIREMENT INSURANCE BENEFITS ON 08/11/2011. I WISH TO WITHDRAW MY THAT [sic] APPLICATION AND REFILE FOR UNREDUCED BENEFITS." R. 22. In support of this application, Tipadis submitted a handwritten letter to SSA, dated April 8, 2013. R. 27-30. In this letter, Tipadis stated that she went to her local SSA office in August 2011 to apply for Medicare and to withdraw from Medicaid and disabilities benefits. R. 27. While there, Tipadis was "automatically put on Early Retirement Social Security," even though she purportedly did not request retirement benefits at that time.[2] Id. Tipadis further reported that she did not wish to be given early retirement

---

[2] In her letter, Tipadis stated that she sought to withdraw from her disability benefits and Medicaid in August 2011 because she had a pending lawsuit that was "scheduled in November

benefits when she went to the SSA office in August 2011, but that the SSA representative she spoke with informed her that she could not withdraw from those benefits at that time. R. 28. He also stated that she would have a "one time" opportunity to receive full retirement benefits if she repaid all of the early retirement benefits she received. Id. Tipadis stated that this representative did not inform her that there was a 12-month time limit to withdraw her application. Id. On June 4, 2013, the Commissioner denied her withdrawal request on the ground that it had not been made within 12 months of the date of Tipadis's entitlement to benefits. R. 23-24.

Tipadis submitted another handwritten letter to the Commissioner, dated July 8, 2013, in which she asked the Commissioner to reconsider this decision. R. 25-26. On November 19, 2013, the Commissioner denied this request. R. 31-34. In its denial of reconsideration, the Commissioner noted that Tipadis's first month of entitlement to RIB was August 2011, and that the governing regulations allowed for the withdrawal of her benefits application only within 12 months of the first month of entitlement. R. 34. The denial noted that this rule was implemented in December 8, 2010, after "[m]edia articles [] started to promote the use of the withdrawal process as a means for retirement insurance beneficiaries to acquire interest-free loans," which "strained the Social Security Trust Fund." Id. The denial stated that "there is no provision in either the Social Security Act or Regulations of the Social Security Administration that allows us to deem an earlier date for your withdrawal request." Id.

---

2011," and she was not allowed to have more than $2,000 in savings while receiving her disability benefits. R. 27. Tipadis stated that her lawsuit settled in February 2012, but that she received no proceeds from that settlement until August 2012. R. 28. Tipadis stated that she planned to repay the amount she had received in early retirement benefits using this money. Id.

B. The Hearing Before the ALJ

Plaintiff requested review of this decision before an Administrative Law Judge ("ALJ"). R. 42-43. A hearing was held before ALJ Moises Penalver on October 15, 2015. R. 78-104. Tipadis appeared pro se. R. 80-81. Tipadis testified and reiterated her earlier contention that she had gone to the local SSA office in August 2011 to withdraw from Medicaid and disabilities benefits, and to apply for Medicare. R. 87-89. Tipadis denied that she requested to be placed on early retirement at that time, but asserted that she was automatically granted such benefits, and that the SSA representative with whom she spoke stated that these benefits could not be withdrawn at that time. R. 89-91, 96-97. Tipadis testified that the SSA representative failed to inform her of the 12-month time limit to withdraw her application for RIB, although he did inform her that she could withdraw from RIB if she paid back all the early payments she received. R. 95-97. Tipadis received approximately $12,651 in RIB between August 2011 and November 2012. R. 100. Tipadis did not learn of the 12-month time limit to withdraw an application for RIB until she attempted to do so in October 2012. R. 97-98.

C. The ALJ's Decision

On February 3, 2016, the ALJ denied Tipadis's request to withdraw her RIB application. R. 6-12. The ALJ noted that Tipadis had failed to request a withdrawal of her RIB application until more than 12 months after she filed that application, and that there "are no exceptions to the policy that any requests for withdrawal must be made within 12 months." R. 11. With respect to Tipadis's claim that she did not file for early RIB, the ALJ found this claim was contradicted by the record. The ALJ pointed to the fact that the record contained a summary of Tipadis's application for RIB dated August 11, 2011, and that Tipadis had "signed" this application. Id. He also noted that Tipadis had admitted at the hearing that she had no other source of income in

4

August 2011 and did not obtain any income until she received her settlement check in August 2012.  Id.

On November 2, 2016, the Appeals Council denied Tipadis's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  R. 2-5.

II. APPLICABLE LAW

    A. Scope of Judicial Review

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted).  Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld,

even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)). The Second Circuit has characterized the substantial evidence standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. (emphasis in original) (citations and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citations and internal quotation marks omitted).

### B. Withdrawal of Applications for Old-Age Insurance Benefits

Under 42 U.S.C. § 402(a), old-age insurance benefits are available to everyone who

> (1) is a fully insured individual (as defined in section 414(a) of this title), (2) has attained age 62, and (3) has filed application for old-age insurance benefits or was entitled to disability insurance benefits for the month preceding the month in which he attained retirement age (as defined in section 416(l) of this title).

See also 20 C.F.R. § 404.310. If the recipient has reached "retirement age," then that person will receive the full amount of their old-age insurance benefits. 42 U.S.C. § 402(a); 20 C.F.R. § 404.409(a). However, for those who have not reached retirement age but seek to receive old-age insurance benefits, the amount of such benefits will be equal to "5/9 of 1 percent of such amount . . . multiplied by [] the number of months" in the period between the date on which the recipient will reach retirement age and the date on which the recipient begins receiving RIB. See 42 U.S.C. § 402(q)(1), (6); 20 C.F.R. § 404.410(a). For those born between January 2, 1943, and January 1, 1955, retirement age is 66. 20 C.F.R. § 404.409(a); see also 42 U.S.C. § 416(l)(1)-

6

(2). At the time she allegedly submitted her application, Tipadis was three months shy of her 65th birthday. See R. 69.

The Commissioner has promulgated regulations setting forth when an individual who has filed an application for old-age insurance benefits may withdraw his or her application. See 20 C.F.R. § 404.640. These regulations provide that after the Commissioner has rendered a determination on an application for old-age insurance benefits, that application may be withdrawn only if, inter alia, "[t]he request for withdrawal is filed within 12 months of the first month of entitlement; and [] [t]he claimant has not previously withdrawn an application for old age benefits." Id. § 404.640(b)(4)(I)-(ii). If a request to withdraw an application is approved, then the application "will be considered as though it was never filed." Id. § 404.640(d).

## III. DISCUSSION

We question whether there is substantial evidence to support the ALJ's apparent finding that Tipadis undertook the acts necessary to make an application for early retirement benefits at the SSA office on August 11, 2011. The ALJ rested this finding on his conclusion that the record showed that Tipadis had "signed" an application for benefits. R.11. In fact, we are unable to discern anything in the record reflecting that Tipadis ever signed an application for benefits. R. 14-15, 69-70.

We do not view this error as altering the ALJ's views on the applicability of the 12-month deadline, however, because that deadline is measured not from an application for benefits but rather from the first month of entitlement following an agency's "determination" of benefits. See 20 C.F.R. § 404.640(b), (d). That determination was issued on August 16, 2011, in the form of a "Notice of Award." R. 18-21. The Notice informed Tipadis that she would receive $930 monthly, R. 18, which was reduced from her full RIB amount, R. 9, and informed her of the

7

process for appealing that award, R. 20. As noted, Tipadis accepted the benefits starting that month and never appealed the award. R. 96.

Tipadis's arguments rely on her assertion that she was not aware of the 12-month time limit to withdraw her RIB application until October 2012, after it was already too late to do so. Pl. Mem. at *1-3.[3] The ALJ made no finding as to Tipadis's knowledge of the time limit and thus we will assume that Tipadis in fact was unaware of the time limit. Also, given Tipadis's pro se status, we will liberally construe this argument, as well as all others in her memorandum of law, to "raise the strongest arguments they suggest." See McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (citation and internal quotation marks omitted). Under this standard, we view Tipadis's argument as seeking equitable relief from the enforcement of the 12-month time limit on the ground that she was unaware of it.

The Court is sympathetic to the perceived unfairness of the situation Tipadis states she was placed in. She came to the SSA office without the purpose of obtaining early retirement benefits but was mistakenly given those benefits by the employee of the SSA office. The SSA representative told her she could convert to full benefits if she paid back the early retirement benefits but did not tell her about the deadline for doing so, which she then missed.

The Court's hands are tied, however, by the narrowness of the doctrines available to prevent the Government from enforcing deadlines contained in regulations. As one court has noted, "whether considered under principles of estoppel or equitable principles, the courts have consistently declined to provide additional exceptions to the SSA's regulatory scheme (including exceptions based on a claimant's ignorance of law)." Morton v. Barnhart, 2003 WL 1856530, at

---

[3] "*__" refers to the page numbers created by the ECF system.

*9 (S.D.N.Y. Apr. 22, 2003) (citations omitted); accord Henry v. Comm'r of Soc. Sec., 2010 WL 11523750, at *8 (D. Vt. July 26, 2010), aff'd, 456 F. App'x 13 (2d Cir. 2011).

The doctrine of "equitable tolling" does not apply here. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); accord Lawrence v. Florida, 549 U.S. 327, 336 (2007) (noting that the extraordinary circumstance must have "prevented timely filing"); Bolarinwa v. Williams, 593 F.3d 226, 231 (2d Cir. 2010); Zerilli-Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003); Estate of Mandarino v. Mandarino, 699 F. Supp. 2d 646, 652 (S.D.N.Y. 2010), aff'd, 408 F. App'x 428 (2d Cir. 2011). Here, there is no evidence that Tipadis was seeking to pursue her right to withdraw the application during the 12-month time period. In addition, it has been held that even a pro se litigant's ignorance of the law does not constitute an extraordinary circumstance warranting the imposition of equitable tolling. See Edwards v. I.N.S., 59 F.3d 5, 8 (2d Cir. 1995) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them."); Hill v. Superintendent Gowanda Corr. Facility, 2009 WL 560690, at *3 (E.D.N.Y. Mar. 4, 2009) ("It is a long-standing rule that the petitioner bears the burden of learning the applicable procedural rules in federal court and abiding by them . . . . [even] when the individual is acting pro se."). Thus, Tipadis's ignorance of this procedural requirement would not allow this Court to equitably toll the 12-month time limit.

The other equitable doctrine Tipadis might invoke is the doctrine of equitable estoppel. Normally, the elements of this doctrine are:

1) the party to be estopped must know the facts; 2) he must intend that his conduct shall

> be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; 3) the latter must be ignorant of the true facts; and 4) he must rely on the former's conduct to his injury.

Scime v. Bowen, 822 F.2d 7, 8 n.1 (2d Cir. 1987) (citation omitted). However, "[t]he doctrine of equitable estoppel is not available against the government except in the most serious of circumstances." Rojas-Reyes v. I.N.S., 235 F.3d 115, 126 (2d Cir. 2000) (citation and internal quotation marks omitted). A party cannot estop a government agency such as the SSA without establishing the traditional elements of estoppel, see Lyng v. Payne, 476 U.S. 926, 935 (1986) ("even assuming that the Government is ever subject to estoppel, a private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present") (citation and internal quotation marks omitted), and also "affirmative misconduct," Schweiker v. Hansen, 450 U.S. 785, 788 (1981) (per curiam). Thus, the Second Circuit in City of N.Y. v. Shalala, 34 F.3d 1161, 1168 (2d Cir. 1994), held that estoppel is applied "to the Government only in those limited cases where the party can establish both that the Government made a misrepresentation upon which the party reasonably and detrimentally relied and that the Government engaged in affirmative misconduct." Absent such misconduct, the Government may not be estopped "from insisting upon compliance with valid regulations governing the distribution of welfare benefits." See Hansen, 450 U.S. at 788.

We do not see believe we can find that Tipadis has satisfied this standard. Tipadis does not allege that there was a "misrepresentation" upon which she relied. She does not claim that she was provided misinformation regarding the deadline to withdraw her application; rather she asserts that the SSA representative failed to inform her of any such deadline. Because there was no "misrepresentation," the estoppel doctrine does not apply. Additionally, the failure to provide information also does not meet the "affirmative misconduct" standard, because the law does not

10

place on the Government any duty to inform Tipadis of the deadline. See generally U.S. Dep't of Hous. & Urban Dev. v. K. Capolino Constr. Corp., 2001 WL 487436, at *8 (S.D.N.Y. May 7, 2001) (Government agency's failure to provide information would not justify estoppel because "[a] failure to act is not affirmative misconduct that can establish estoppel against the Government.").

Assuming Tipadis was placed on RIB on August 11, 2011, without her having made any application or request for benefits, and without the SSA representative telling her what she had to do to obtain full benefits, including any applicable deadline, we would view the SSA's enforcement of the deadline as being very unfair. Nevertheless, the Second Circuit has held that even where the Government has acted in a "manifestly unfair" manner, that is not enough to estop the Government. See Scime, 822 F.2d at 9. Thus, we do not believe that the case law regarding estoppel allows us to prevent the Government from enforcing the 12-month deadline.

Finally, Tipadis points to the fact that the impetus behind Social Security regulations barring withdrawal of applications submitted after 12 months was to prevent the Social Security Trust Fund from being used as a source of interest-free loans for beneficiaries. See Pl. Mem. at *3. She argues that this regulation is inapplicable to her case because she "never used the SS Trust Fund to gain any profit." Id. Although the Commissioner's denial of Tipadis's request noted that the 12-month application withdrawal limit was promulgated with this sort of abuse in mind, R. 34, the regulation itself does not limit its application to situations where a claimant is attempting to abuse the Trust Fund in this fashion, see 20 C.F.R. § 404.640. Thus, this argument presents no barrier to the SSA's position here.

IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Docket # 17) is granted and this case is dismissed. The Clerk is requested to enter judgment.

SO ORDERED.

Dated: January 8, 2018
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy sent to:

Anastasia Tipadis
118 Post Ave.
Apt. 3-A
New York, NY 10034